**EXHIBIT B**

**(PROPOSED INTERIM ORDER)**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Sportsman's Warehouse, Inc., <u>et al.</u>,[1] | Case No. _____ |
| Debtors. | (Jointly Administered) |
| | [Re Docket No. _____] |

### INTERIM FINANCING ORDER (I) AUTHORIZING THE DEBTORS TO INCUR POST-PETITION INDEBTEDNESS WITH ADMINISTRATIVE SUPERPRIORITY AND SECURED BY SENIOR LIENS ON SUBSTANTIALLY ALL ASSETS PURSUANT TO SECTION 364(c) AND (d) OF THE BANKRUPTCY CODE, (II) GRANTING USE OF CASH COLLATERAL, (III) GRANTING ADEQUATE PROTECTION, (IV) GRANTING OTHER RELATED RELIEF, AND (V) SCHEDULING A FINAL HEARING

THIS MATTER came before the Court on March [__], 2009 on the motion

(the "<u>Motion</u>") of Sportsman's Warehouse, Inc., and affiliated debtors and debtors in possession

(collectively, the "<u>Debtors</u>") for entry of an interim and final order authorizing the Debtors to

(i) incur post-petition indebtedness with administrative superpriority and secured by senior liens

on substantially all assets pursuant to Title 11 of the United States Code, 11 U.S.C. §§101 et seq.

(as amended, the "<u>Bankruptcy Code</u>"), including pursuant to sections 105(a), 361, 362,

364(c)(1), 364(c)(2), 364(c)(3) and 364(d) thereof, and Rules 2002, 4001 and 9014 of the Federal

Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), (ii) grant use of cash collateral

pursuant to sections 361 and 363(b) of the Bankruptcy Code, and Bankruptcy Rule 4001(b)

subject to the terms of the Budget (as defined below) and this Interim Order ("<u>Cash Collateral</u>"),

(iii) grant adequate protection in accordance with sections 364(d), 363(c)(2) and 361 of the

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Sportsman's Warehouse, Inc. (2614), Pacific Flyway Wholesale, Inc. (5734), Minnesota Merchandising Corp. (2908), Sportsman's Aviation, LLC (4736), Sportsman's Warehouse Holdings, Inc. (5614), and Sportsman's Warehouse Southwest, Inc (8590).

Bankruptcy Code. (iv) grant other related relief and (v) schedule a final hearing (the "Motion").

Pursuant to the Motion, the Debtors have sought the following relief:[2]

(a)    that the Court authorize, pursuant to the Bankruptcy Code, including sections 105(a), 361, 362, 364(c)(1), 364(c)(2), 364(c)(3) and 364(d) thereof, and Rules 2002, 4001, and 9014 of the Bankruptcy Rules, the Debtors to obtain financial accommodations (the "DIP Facility"), pursuant to that certain Senior Secured Superpriority Debtor-In-Possession Financing Agreement (together with all schedules and exhibits thereto, and as it may be amended, restated, supplemented, or otherwise modified from time to time, the "DIP Credit Agreement," and together with all security, pledge, guaranty, and other lien and loan documents entered into in connection therewith and as further amended, restated, supplemented or otherwise modified from time to time, the "DIP Loan Documents") by and among (i) the Debtors, (ii) General Electric Capital Corporation, as Agent and as a lender (the "DIP Agent"), and (iii) any and all other financial institutions which are now, or which hereafter become, a party to the DIP Credit Agreement as lenders (collectively, the "DIP Lenders" and, individually, a "DIP Lender"), consisting of a revolving credit facility in an original principal amount of Eighty-Five Million Dollars ($85,000,000) under which loans may be made, all as set forth more specifically in the DIP Loan Documents;

(b)    that the Court authorize the Debtors to utilize the proceeds of the DIP Facility and Cash Collateral upon entry of this Interim Order (as defined below), *inter alia* (i) to fund the working capital requirements, operating expenses, and capital expenditures of the Debtors during these Chapter 11 cases (the "Cases") and other line items subject to and in accordance with the terms of the Budget (as defined below), this Interim Order (as defined below), and the DIP Loan Documents, (ii) to fund post-petition allowed fees and expenses incurred by the professionals for the Debtors and Committee (as defined below) as provided for and subject to the terms of the Budget, Carve-Out (as defined below), this Interim Order, and the DIP Loan Documents, (iii) to pay the net cash proceeds of Pre-Petition Collateral (as defined below) received by the Debtors in reduction of the Pre-Petition Revolver Obligations (and applied prior to the DIP Facility) and, subject to the entry of the Final Order (as defined below), to fund the indefeasible payment in full in cash of the Pre-Petition Revolving Credit Agreement, (iv) to pay fees and expenses of the DIP Agent and the DIP Lenders related to the DIP Facility and the Cases, including, without limitation, attorneys' fees and fees of professional advisors on the terms set forth in the DIP Loan Documents or herein, and (v) to pay Adequate Protection Payments (as defined below) to certain of the pre-petition secured lenders and the pre-petition agents therefor, all under the pre-petition credit facilities discussed below;

(c)    that, pursuant to the Bankruptcy Code, including sections 364(c)(1), 364(c)(2), 364(c)(3) and 364(d) thereof, the DIP Lenders be accorded a DIP Superpriority Claim (as defined below) and DIP Liens (as defined below) in and upon any and all property and assets of the Debtors, of any nature whatsoever and wherever located, whether first arising prior to or following the Petition Date, now owned or hereafter acquired, including all accounts, all chattel paper, commercial tort claims, all deposit accounts, all documents, all equipment, all general

---

[2] Capitalized terms not defined herein shall have the meanings ascribed to those terms in the Motion and the DIP Loan Documents (as defined below).

intangibles, all instruments, all inventory, all investment property, all letter-of-credit rights, all books and records, and all proceeds, rents, profits, and offspring of the foregoing (including Cash Collateral), and subject to the entry of the Final Order, all proceeds of Avoidance Actions (as defined below, and all of the foregoing, as more fully set forth in the DIP Loan Documents, the "DIP Collateral"), subject and subordinate in each case to the Carve-Out;

(d)     that the Court authorize the Debtors to use Cash Collateral in which certain of the Pre-Petition Lenders (as defined below) have an interest, subject to the terms of the Budget and applying all Cash Collateral to the Pre-Petition Revolver Obligations (as defined below), the DIP Obligations (as defined below) and the Pre-Petition Term Loan Obligations (as defined below) as set forth herein, and certain of the pre-petition lenders be granted adequate protection with respect to, inter alia, such use of the Cash Collateral and any resulting diminution in the value of certain of the Pre-Petition Collateral (as defined below);

(e)     that pursuant to applicable provisions of the Bankruptcy Code, including sections 361 and 507(b) thereof, and the terms of this Interim Order and the Final Order, certain of the pre-petition lenders, whose liens and security interests are being primed by the DIP Obligations (as defined below), DIP Liens (as defined below) and DIP Superpriority Claim (as defined below) under the DIP Credit Agreement and other DIP Loan Documents, and whose Cash Collateral may be used, sold or leased by the Debtors, be granted the following as adequate protection of such interests with the same relative priority of the liens and claims owing to certain pre-petition lenders (collectively, the "Adequate Protection"): (i) Adequate Protection Liens (as defined below), subject only to the DIP Obligations, DIP Liens, DIP Superpriority Claim, and the Carve-Out, (ii) Section 507(b) Claims (as defined below) subject and subordinate only to the DIP Obligations, DIP Liens, DIP Superpriority Claim, and the Carve-Out, and (iii) Adequate Protection Payments, all on the terms more full set forth herein;

(f)     to schedule, pursuant to Bankruptcy Rule 4001, an interim hearing (the "Interim Hearing") on the Motion to be held before this Court to consider entry of the proposed interim order annexed to the Motion (this "Interim Order"); and

(g)     to schedule, pursuant to Bankruptcy Rule 4001, a final hearing for this Court to consider entry of a final order approving the Motion, which order shall be substantially in the form of this Interim Order and otherwise contain terms and conditions acceptable to the DIP Agent (the "Final Order").

IT APPEARING that notice of the Motion has been given and served by the

Debtors on: (1) the Office of the United States Trustee, (2) the local office of for the Internal

Revenue Service, (3) the Securities and Exchange Commission, (4) counsel for the DIP Agent,

(5) counsel for each of the Pre-Petition Agents (as defined below) and Pre-Petition Lenders (as

defined below), (6) the Debtors' alleged secured creditors to the extent known, (7) Office of the

United States Attorney for the District of Delaware, Civil Division; (8) the United States

Department of Justice; (9) the thirty (30) largest unsecured creditors of each of the Debtors, as reflected in the lists submitted pursuant to Bankruptcy Rule 1007(d), and (10) any other parties required to receive notice pursuant to Bankruptcy Rules 2002, 4001 or 9014 or requesting notice pursuant to a written and timely received request (collectively, the "Notice Parties"); and the Interim Hearing having been held; and upon all of the pleadings filed with the Court and evidence presented in support of the Motion, and all of the proceedings held before the Court; and the Court having noted the appearances of parties in interest at the hearing in the record of this Court; and any objections to the relief requested in the Motion having been resolved or overruled by the Court; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their Estates (as defined below) and creditors, and that such relief is essential for the continued operations of the Debtors' businesses; and it further appearing that the Debtors are unable to obtain unsecured credit for money borrowed allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code or other secured financing on equal or more favorable terms than provided by the DIP Credit Agreement and the other DIP Loan Documents; and after due deliberation and consideration, and sufficient cause appearing therefor,

THE COURT HEREBY FINDS:[3]

A.    Notice and Hearing.  Notice of the Motion has been served in accordance with all applicable rules and guidelines, including under section 102(1) of the Bankruptcy Code and Bankruptcy Rule 4001(b), which notice is appropriate in the particular circumstances and sufficient for all purposes under the Bankruptcy Code and the applicable Federal and Local Rules of Bankruptcy Procedure with respect to the relief requested.

---

[3] Pursuant to Bankruptcy Rule 7052, findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact.

B.     <u>Chapter 11 Cases Filed</u>.  On March __, 2009 (the "<u>Petition Date</u>"), the

Debtors filed their voluntary petitions under chapter 11 of the Bankruptcy Code, and are

presently operating as debtors-in-possession pursuant to 11 U.S.C. §§1107 and 1108.

C.     <u>Necessity and Best Interest</u>.  The Debtors do not have sufficient

unencumbered cash or other assets with which to continue to operate their businesses in Chapter

11.  The Debtors require authority to use Cash Collateral and to access the DIP Facility to

continue their business operations without interruption with the objective of maximizing the

value of property of the Estates.  The use of Cash Collateral and the proceeds of the DIP Facility,

to the extent and on the terms and conditions set forth herein, are necessary to avoid immediate

and irreparable harm to the Estates.  The amount of the DIP Facility and Cash Collateral

authorized to be used hereby shall not exceed the amounts reflected in the initial budget prepared

by the Debtors, in form and substance satisfactory to the DIP Agent and attached to this Interim

Order as Exhibit A (as amended, supplemented, extended or otherwise modified from time to

time, the "<u>Budget</u>"), for the time period set forth therein, but in no event beyond the Termination

Date (as defined below).

D.     <u>Purposes</u>.  The Debtors are authorized to use the Cash Collateral and

advances on the DIP Facility, *inter alia,* (i) to fund the working capital requirements, operating

expenses, and capital expenditures of the Debtors during these Cases, (ii) to fund post-petition

allowed fees and expenses incurred by the professionals for the Debtors and any statutory

committee appointed in these Cases ("Committee"), (iii) to pay the net cash proceeds of Pre-

Petition Collateral received by the Debtors in reduction of the Pre-Petition Revolver Obligations

(and applied prior to the DIP Facility) and, subject to the entry of the Final Order, to fund the

indefeasible payment in full in cash of the Pre-Petition Revolving Credit Agreement, (iv) to pay

fees and expenses of the DIP Agent and the DIP Lenders related to the DIP Facility and the

Cases, including, without limitation, attorneys' fees and fees of professional advisors on the

terms set forth in the DIP Loan Documents or herein, and (v) to pay Adequate Protection

Payments, subject to and as set forth in the Budget, this Interim Order and the DIP Loan

Documents.

The Court having determined that good cause exists for the relief requested in the

Motion, and based on the acknowledgements, representations and stipulations of the Debtors,

DIP Agent, DIP Lenders, Pre-Petition Agents and Pre-Petition Lenders, subject to the rights of

other parties in interest,

IT IS HEREBY ORDERED as follows:

1.    Jurisdiction. This Court has core jurisdiction over the Cases, this Motion,

and the parties and property affected hereby pursuant to 28 U.S.C. §§157(b) and 1334. Venue is

proper before this Court pursuant to 28 U.S.C. §§1408 and 1409.

2.    Notice. Under the circumstances, notice of the Motion and the Interim

Hearing constitutes due and sufficient notice thereof and complies with all applicable

Bankruptcy Rules, including Rules 2002, 4001(b) and (c), and 9014 and local rules of this Court,

and no other notice need be given.

3.    Pre-Petition Loan Documents.

(a)    Prior to the Petition Date, the Debtors entered into that certain Financing

Agreement by and among General Electric Capital Corporation, as Agent (the "Pre-Petition

Revolver Agent"), the Lenders that are parties thereto (the "Pre-Petition Revolver Lenders"), and

the Debtors dated as of October 31, 2007, as amended or otherwise modified from time to time,

including, without limitation, the First Amendment dated as of January 11, 2008, the Second

Amendment dated as of March 11, 2008, and the Third Amendment dated as of June 26, 2008 (collectively, the "Pre-Petition Revolving Credit Agreement") and the other agreements, documents, notes and instruments in connection therewith (collectively, the "Pre-Petition Revolver Loan Documents") in respect of the Debtors' obligations thereunder (the "Pre-Petition Revolver Obligations").  Under the Pre-Petition Revolver Loan Documents, the Pre-Petition Revolver Lenders were granted certain liens on, and security interests in (collectively, the "Pre-Petition Revolver Liens"), certain property of each borrower and guarantor under the Pre-Petition Revolver Loan Documents, whether now owned or existing or hereafter acquired or arising regardless of where located (all as more fully set forth in the Pre-Petition Revolver Loan Documents, the "Pre-Petition Revolver Collateral").

(b)     Prior to the Petition Date, the Debtors entered into that certain Term Loan Financing Agreement by and among GB Merchant Partners, LLC, as Agent (the "Pre-Petition Term Loan Agent"), the Lenders that are parties thereto (the "Pre-Petition Term Loan Lenders") and the Debtors dated as of January 11, 2008, as amended or otherwise modified from time to time (collectively, the "Pre-Petition Term Loan Credit Agreement") and the other agreements, documents, notes and instruments in connection therewith (collectively, the "Pre-Petition Term Loan Documents") in respect of the Debtors' obligations thereunder (the "Pre-Petition Term Loan Obligations").  Under the Pre-Petition Term Loan Documents, the Pre-Petition Term Loan Lenders were granted certain liens on, and security interests in (collectively, the "Pre-Petition Term Loan Liens"), certain property of each borrower and guarantor under the Pre-Petition Term Loan Documents, whether now owned or existing or hereafter acquired or arising regardless of where located (all as more fully set forth in the Pre-Petition Term Loan Documents, the "Pre-Petition Term Loan Collateral").

(c)     Where applicable, the Pre-Petition Revolver Lenders and the Pre-Petition Term Loan Lenders shall be collectively referred to as the "Pre-Petition Lenders," the Pre-Petition Revolver Agent and the Pre-Petition Term Loan Agent shall be collectively referred to as the "Pre-Petition Agents," the Pre-Petition Revolving Credit Agreement and the Pre-Petition Term Loan Agreement shall be collectively referred to as the "Pre-Petition Loan Agreements," the Pre-Petition Revolver Loan Documents and the Pre-Petition Term Loan Documents shall be collectively referred to as the "Pre-Petition Loan Documents," the Pre-Petition Revolver Obligations and the Pre-Petition Term Loan Obligations shall be collectively referred to as the "Pre-Petition Obligations," the Pre-Petition Revolver Collateral and the Pre-Petition Term Loan Collateral shall be collectively referred to herein as the "Pre-Petition Collateral," and the Pre-Petition Revolver Liens and the Pre-Petition Term Loan Liens shall be collectively referred to as the "Pre-Petition Liens."

(d)     Prior to the Petition Date, the Debtors entered into that certain Intercreditor Agreement by and between the Pre-Petition Term Loan Agent and Pre-Petition Revolver Agent, dated as of January 11, 2008, as amended or otherwise modified from time to time (collectively, the "Intercreditor Agreement"). The relative rights and priorities of the agents, lenders and claims and Pre-Petition Liens under the Pre-Petition Loan Documents are governed by the Intercreditor Agreement.

4.     Purpose and Necessity of Financing.

(a)     Good cause has been shown for entry of this Interim Order. The Debtors require post-petition financing to be available under the DIP Facility and the right to use Cash Collateral, to, among other things, fund the working capital requirements, operating expenses, and capital expenditures of the Debtors during these Cases necessary to maintain and preserve

their assets, and continue operation of their business. The Debtors are unable to obtain adequate unsecured credit allowable under section 503 of the Bankruptcy Code as an administrative expense and are unable to obtain other financing under section 364(c) or 364(d) of the Bankruptcy Code on equal or more favorable terms than the DIP Credit Agreement and the other DIP Loan Documents.

      (b)    Post-petition financial accommodations in the amount provided by the DIP Agent and DIP Lenders pursuant to the DIP Loan Documents are unavailable to the Debtors generally and, including from the DIP Lenders, without the grant to the DIP Agent for the ratable benefit of the DIP Lenders, pursuant to sections 364(c)(1), 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code, the claims, priorities and liens provided for in the DIP Loan Documents and this Interim Order, which are hereby granted as follows: (i) superpriority administrative expense claims under 11 U.S.C. §364(c)(1) in the Cases of each of the Debtors in respect of "DIP Obligations," which includes all amounts owing under the DIP Loan Documents or to the DIP Agent and DIP Lenders (including, without limitation, all "Obligations" as defined in the DIP Credit Agreement), including, without limitation, all principal of, interest on, and fees, costs, expenses and other charges owing in respect of, such amounts (including, without limitation, any reasonable attorneys', accountants', financial advisors' and other fees, costs and expenses that are chargeable by or reimbursable to the DIP Agent or the DIP Lenders under this Interim Order or the DIP Loan Documents), and any indemnity claims, in each case whether contingent or otherwise and whether arising before or after the Petition Date with priority over all other administrative expenses under the Bankruptcy Code (including the kinds specified in or arising or ordered under sections 105(a), 326, 328, 330, 331, 503(b), 506(c), 507, 546(c), 552(b), 726 and 1114 thereof or otherwise, whether or not such expenses or claims may become secured by a

judgment lien or other non-consensual lien, levy or attachment), which superpriority expenses of the DIP Lenders shall be subordinate only to the Carve-Out (the "DIP Superpriority Claim"); (ii) a first priority, priming security interest in and lien under section 364(d)(1) on all Pre-Petition Collateral constituting DIP Collateral as security for all of the DIP Obligations (the "Section 364(d)(1) Liens"), which Section 364(d)(1) Liens shall be senior to any existing liens or claims, including the liens and obligations under the Pre-Petition Revolver Loan Documents and the Pre-Petition Term Loan Documents, and subject only to the Carve-Out; (iii) a first priority security interest and lien under Section 364(c)(2) on all unencumbered property constituting DIP Collateral as security for all of the DIP Obligations (the "Section 364(c)(2) Liens"), which Section 364(c)(2) Liens shall be subject only to the Carve-Out; and (iv) a junior lien under section 364(c)(3) on any property that constitutes DIP Collateral as to which (a) a valid, perfected, unavoidable lien in favor of a third party existed as of the Petition Date or (b) a valid, perfected, unavoidable lien is perfected after the Petition Date as permitted by Section 546(b) of the Bankruptcy Code, as security for all of the DIP Obligations (the "Section 364(c)(3) Liens"), subject only to the Carve-Out and such valid and unavoidable liens. The Section 364(d)(1) Liens, Section 364(c)(2) Liens, and Section 364(c)(3) Liens shall be collectively referred to as the "DIP Liens" (for the avoidance of doubt, the DIP Agent and DIP Lenders shall hold DIP Liens in the Cash Collateral).

(c)     After considering all alternatives, the Debtors have concluded that the financial accommodations provided pursuant to the DIP Facility and the use of Cash Collateral under the terms of this Interim Order represent the best working capital financing available to the Debtors.

5.     Repayment of Obligations. Notwithstanding anything herein to the

contrary or in any other DIP Loan Document, until entry of the Final Order, all proceeds received from Debtors shall be applied first (and applied prior to the DIP Facility) in reduction of the Pre-Petition Revolver Obligations until the indefeasible payment in full in cash thereof, second, to the DIP Obligations until the "indefeasible payment in full in cash"[4] thereof, and third, to the Pre-Petition Term Loan Obligations until the indefeasible payment in full in cash thereof. Following entry of the Final Order, the Debtors shall use proceeds from the DIP Facility to promptly indefeasibly pay in full in cash the Pre-Petition Revolver Obligations, and, notwithstanding such payment, the Debtors shall remain liable for any remaining and/or surviving Pre-Petition Revolver Obligations, including, without limitation, any such amounts in respect of indemnity obligations.

6.      Good Faith Bargaining.  The DIP Facility, the use of Cash Collateral, and the other provisions of this Interim Order have been negotiated in good faith and at arm's-length among the Debtors, the DIP Lenders  and certain consenting Pre-Petition Lenders, and the extension of the financial accommodations to the Debtors by the DIP Agent and DIP Lenders pursuant to this Interim Order and the DIP Loan Documents have been and are deemed to be extended by the DIP Agent and DIP Lenders in good faith, as that term is used in section 364(e) of the Bankruptcy Code.  The DIP Agent and DIP Lenders are entitled to, and are hereby granted, the full protections of section 364(e) of the Bankruptcy Code.

7.      The Budget and the Borrowing Base.  The Debtors represent to the DIP

---

[4] A reference herein to payment "in final," "in full," or "indefeasibly," or qualified by any similar words shall include the cash collateralization of, at a minimum, 110% of the amount of any DIP Obligations or Pre-Petition Obligations, as applicable, that are contingent obligations, including any contingent indemnification obligations, and the establishment of any reserves in the DIP Agent's discretion, including, without limitation, for attorneys' fees and expenses in an amount not to exceed $300,000 (and a reserve of $300,000 for contingent indemnification obligations under the Pre-Petition Term Loan Documents).  This section shall not be in limitation of any rights or remedies of the DIP Agent or DIP Lenders under the DIP Loan Documents with respect to contingent DIP Obligations and the Pre-Petition Agents and Pre-Petition Lenders under the Pre-Petition Loan Documents with respect to contingent Pre-Petition Obligations.

Agent, the DIP Lenders, the Pre-Petition Agents and Pre-Petition Lenders that the Budget is achievable and will allow the Debtors to operate in the Cases without the accrual of unpaid administrative expenses. The Budget shall be amended, supplemented, extended or otherwise modified from time to time until the Termination Date in form and substance reasonably satisfactory to the DIP Agent and Pre-Petition Agents. On the third business day of each week, the Debtors shall deliver a variance analysis to the DIP Agent and the Pre-Petition Agents with respect to all items for the previous week. The DIP Agent and DIP Lenders are relying upon the Debtors' compliance with the Budget in accordance with this Interim Order in determining to enter into the DIP Loan Documents and entry of this Interim Order. In addition, the Pre-Petition Agents and Pre-Petition Lenders are relying upon the Debtors' compliance with the Budget in accordance with this Interim Order in determining to consent to the DIP Loan Documents and entry of this Interim Order. No Debtor shall allow (a) the payment of any expenses or other disbursements other than those set forth in the Budget; provided, that the Actual Disbursement Amount for any Cumulative Four Week Period may not exceed the Budgeted Disbursement Amount for such Cumulative Four Week Period by more than ten percent (10%), and (b) the Actual Receipts from stores other than the Permitted Store Closings may not at any time be less than ninety percent (90%) of the Budgeted Receipts as of and for the corresponding date in the Budget, and it shall be an Event of Default if the Debtors fail to comply with the Budget subject to the variances in this sentence. In addition, the aggregate amount of availability under the DIP Facility from time to time prior to the Termination Date shall be subject to borrowing base limitations, availability criteria and other terms, all as set forth in the DIP Credit Agreement, including, without limitation, with the Alternative Borrowing Base set forth in the DIP Credit Agreement.

8.      <u>Borrowing Authorization</u>.  The DIP Credit Agreement is hereby approved on an interim basis.  The Debtors are hereby authorized to enter into and perform the transactions contemplated in this Interim Order and the DIP Loan Documents and to borrow under the DIP Credit Agreement on an interim basis up to an aggregate principal amount of $30,000,000 (the "<u>Interim Amount</u>"), subject to the terms and conditions of this Interim Order and the DIP Loan Documents.  The DIP Credit Agreement and the other DIP Loan Documents shall constitute and are hereby deemed to be the legal, valid and binding obligations of the Debtors party thereto and each of their respective estates ("<u>Estates</u>"), and the guarantors set forth in the DIP Loan Documents, and enforceable against each such Debtor and its respective Estate in accordance with the terms hereof and the DIP Loan Documents and any successor of the Debtor or representative of the Estates (including a trustee, responsible person, or examiner with expanded powers).  The Debtors are authorized to obtain financial accommodations pursuant to the terms of the DIP Credit Agreement, the DIP Loan Documents, and this Interim Order.  The Debtors hereby acknowledge and agree that the DIP Obligations pursuant to this Interim Order and the DIP Loan Documents shall be joint and several.

9.      <u>Due Authorization</u>.  The Debtors acknowledge, represent, stipulate and agree with the DIP Agent, DIP Lenders, Pre-Petition Agents and Pre-Petition Lenders, subject to the rights of other parties in interest, that:

(a)      subject to the entry of this Interim Order, the Debtors have obtained all authorizations, consents and approvals necessary from, and have made all filings with and given all notices to, all federal, state and local governmental agencies, authorities and instrumentalities required to be obtained, made or given by the Debtors in connection with the execution, delivery, performance, validity and enforceability of the DIP Loan Documents;

(b)     in entering into the DIP Loan Documents and obtaining the use of Cash Collateral, and as consideration therefor and for the other accommodations and agreements of the DIP Lenders reflected herein and in the DIP Loan Documents, the Debtors hereby agree that until such time as all of the DIP Obligations are indefeasibly paid in full in cash and the DIP Credit Agreement and DIP Loan Documents are terminated in accordance with the terms thereof, and the Pre-Petition Term Loan Obligations are indefeasibly paid in full in cash, the Debtors shall not in any way prime or seek to prime the DIP Obligations, the DIP Liens or the DIP Superpriority Claim provided to the DIP Lenders under this Interim Order or do any of the foregoing with respect to the Pre-Petition Term Loan Obligations by offering a subsequent lender or a party in interest a superior or *pari passu* lien or administrative expense pursuant to sections 105(a), 326, 328, 330, 331, 364(c), 364(d), 503, 506, 507, 546(c), 552(b), 726 or 1114 of the Bankruptcy Code or otherwise or acquiescing thereto;

(c)     each Debtor is jointly and severally liable for, and hereby absolutely and unconditionally guarantees to the DIP Agent and DIP Lenders and their respective successors and assigns, the full and prompt payment when due (whether at maturity or earlier, by reason of acceleration or otherwise, and at all times thereafter) and performance of, all DIP Obligations owed or hereafter owing to DIP Agent or any DIP Lender by each other Debtor.  Each Debtor agrees that (i) its guarantee obligation hereunder is a present and continuing guaranty of payment and performance and not of collection, (ii) its obligations under this Interim Order and any DIP Loan Document shall not be discharged until the payment and performance, in final, in full, in cash of the DIP Obligations, and the termination of the lending commitments under the DIP Loan Documents, and (iii) its guaranty obligations hereunder shall be, and are, absolute and unconditional for all purposes in these Cases and any successor case; and

(d)     the Budget includes all reasonable, necessary, and foreseeable expenses to be incurred in connection with the operation of the Debtors' businesses for the period set forth in the Budget.  By accepting the Budget submitted to them by the Debtors and by taking any other actions pursuant to this Interim Order or the DIP Loan Documents, none of the DIP Agent, DIP Lenders, Pre-Petition Agents or Pre-Petition Lenders shall be deemed (i) to be in control of the operations or any liquidation of the Debtors; or (ii) to be acting as a "responsible person" or an "owner" or "operator," as such terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, as amended, or any similar federal or state statute, rule or guideline with respect to the operation, management, or any liquidation of the Debtors.

10.     Reserves.  The DIP Agent and DIP Lenders retain the right in their reasonable discretion to establish or modify reserves on written notice (which notice can be by e-mail or facsimile) to the Debtors to maintain, preserve and/or protect the DIP Collateral and the value thereof and the prospect of repayment of the DIP Obligations, including, without limitation, with respect to taxes, insurance, and the Carve-Out (although the DIP Agent and DIP Lenders shall not have a duty to professionals in respect of the Carve-Out to collect and deliver any amounts relative thereof).

11.     Interest, Fees, and Expenses.  The DIP Obligations shall bear interest at the rates (including any applicable default rate after the occurrence of certain specified events in the DIP Loan Documents), and be due and payable, as set forth in, and in accordance with the terms and conditions of, this Interim Order and the DIP Loan Documents, in each case without further notice, motion or application to, order of, or hearing before, this Court.  In addition, the Debtors shall pay to the DIP Agent and DIP Lenders (subject to a limitation of $10,000 for DIP

Lenders' legal fees and expenses, provided, however, such limitation does not apply to the DIP Agent) on demand all reasonable fees, costs, expenses and other charges payable under the terms of the DIP Loan Documents, including the following fees defined or set forth therein: (a) the Unused Commitment Fee, (b) the fees set forth in the Fee Letter (and the Debtors shall also pay the fees sent forth in the GB Fee Letter (as defined below)), whether or not incurred pre- or post-petition, in each case whether or not the DIP Loan Documents and transactions contemplated therein are consummated and whether or not such amounts are included in the Budget or arose before or after the Petition Date. None of such fees, costs and expenses payable pursuant to this paragraph shall be subject to separate approval by this Court (but this Court shall resolve any dispute as to the reasonableness of any such legal fees and expenses). The Debtors shall pay the fees, costs and expenses provided for in this paragraph promptly after the invoices for such fees and expenses shall have been submitted to the Debtors (invoices of professional advisors may be redacted to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine). No advisor to the DIP Agent or DIP Lenders shall be required to file an application seeking compensation for services or reimbursement of expenses with the Court. The Debtors shall promptly provide copies of such invoices to the respective counsel to the Pre-Petition Agents and the Committee (following its appointment). The Pre-Petition Agents and Committee shall receive ten (10) days notice and opportunity to object to the payment of any fees and expenses of such advisors of the DIP Agent or DIP Lenders. Any and all fees, costs and expenses paid prior to the Petition Date by any of the Debtors to the DIP Agent or DIP Lenders in connection with or with respect to the DIP

Facility, DIP Credit Agreement or other DIP Loan Documents are hereby approved in full.

12.     Authorization to Act.  Each of the Debtors is expressly authorized and empowered to perform, and the automatic stay of 11 U.S.C. §362 is hereby modified to permit them to make, execute and deliver all instruments and documents (including the execution of security agreements, mortgages and financing statements), take such other actions and to pay all fees and expenses, which may be reasonably required or necessary for the Debtors' performance under the DIP Loan Documents and this Interim Order, including, inter alia: (i) to enter into and deliver the DIP Loan Documents, (ii) to perform all of their obligations under the DIP Loan Documents and such other agreements as may be required by the DIP Loan Documents or as provided for in this Interim Order, (iii) to modify or amend the DIP Credit Agreement or any other DIP Loan Documents without further order of the Court, in each case, in such form as the DIP Agent and the DIP Lenders may agree; provided, that notice of any modification or amendment shall be provided to the Pre-Petition Agents, Committee and the U.S. Trustee, which parties shall have five (5) days from the date of such notice within which to object in writing (notwithstanding the foregoing, any material modification of the DIP Loan Documents shall require Court approval); further provided, that if such objection is timely provided, then such modification or amendment shall be permitted only pursuant to an order of the Court, (iv) to pay the fees and expenses set forth in the DIP Loan Documents or this Interim Order, including reasonable attorneys' and other professional fees and disbursements as provided herein or in the DIP Loan Documents, and (v) to perform and do all other acts that may be required by the DIP Agent in connection with the DIP Loan Documents or this Interim Order.  Notwithstanding the foregoing, any modifications or waivers of the Alternative Borrowing Base or any component thereof, including, without limitation, the definitions of Borrowing Base and Alternative

Borrowing Base set forth in the DIP Credit Agreement, and sections 3.1(a), 6.10 and 6.23 thereof, shall be in form and substance acceptable to the DIP Agent and Pre-Petition Agents.

13. <u>Administrative Expense, Lien Status and Priority</u>.

(a) For the DIP Obligations, the DIP Agent is granted, for itself and the ratable benefit of the DIP Lenders, (i) pursuant to 11 U.S.C. §364(c)(1), the DIP Superpriority Claim in respect of the DIP Obligations, (ii) pursuant to 11 U.S.C. §§364(c)(2), (c)(3) and (d)(1), the DIP Liens in the DIP Collateral to secure the DIP Obligations. The DIP Superpriority Claim, DIP Liens and Adequate Protection Liens granted to the DIP Lenders and Pre-Petition Lenders under this Interim Order and the DIP Loan Documents shall continue in the Cases and in any superseding case under the Bankruptcy Code and such DIP Superpriority Claim, DIP Liens and Adequate Protection Liens shall maintain their priority as provided in this Interim Order until all of the DIP Obligations have been indefeasibly satisfied in final in full in cash. For the avoidance of doubt, upon entry of the Final Order, the DIP Obligations, DIP Liens, the DIP Superpriority Claim and the Adequate Protection Liens shall have full recourse to the proceeds of "<u>Avoidance Actions</u>," which includes (i) all claims and causes of actions under Chapter 5 of the Bankruptcy Code, including, <u>inter alia</u>, those under sections 502(d), 544, 545, 547, 548, 549, 550, 552(b) and 553 and (ii) any other claims or causes of action of the Estates under the Bankruptcy Code created in connection with the Cases or under the Bankruptcy Code.

(b) The DIP Liens of the DIP Lenders under the DIP Loan Documents and the Adequate Protection Liens of the Pre-Petition Lenders under the Pre-Petition Loan Documents as approved and perfected by this Interim Order include, <u>inter alia</u>, liens upon and security interests in (i) all of those items and types of collateral in which security interests may be created under Article 9 of the Uniform Commercial Code, (ii) all of those items and types of collateral not

governed by Article 9 of the Uniform Commercial Code, including licenses issued by any federal

or state regulatory authority, and any leasehold or other real property interests, (iii) any and all

other DIP Collateral of any nature or form, and (iv) the products, rents, offspring, profits, and

proceeds of any of the foregoing. None of the DIP Obligations, DIP Liens, DIP Superpriority

Claim or Adequate Protection Liens shall (a) be subject to any lien or security interest that is

avoided and preserved for the benefit of the Estates under section 551 of the Bankruptcy Code,

(b) subject to any inter-company claim, whether secured or unsecured, of any Debtor or any

domestic or foreign subsidiary or affiliate of any Debtor, or (c) hereafter be subordinated to or

made pari passu with any other lien or security interest under sections 361, 363 or 364 of the

Bankruptcy Code or otherwise except as expressly provided in this Interim Order.

14. Carve-Out.

(a) Generally. Notwithstanding anything to the contrary contained in this

Interim Order, upon the occurrence of the Carve-Out Trigger Date (as defined below), the liens

and claims in favor of the DIP Agent, DIP Lenders, Pre-Petition Agents, or Pre-Petition Lenders

shall be subject only to the payment, without duplication, of the following fees and expenses (the

amounts set forth below, together with the limitations set forth therein, collectively, the "Carve-

Out"); (i) the claims of the respective retained professionals of the Debtors and Committee,

whose retention is approved by this Court during the Cases pursuant to Sections 327, 328, and

1103 of the Bankruptcy Code, (collectively, the "Retained Professionals") for unpaid fees and

expenses in accordance with the Budget which were incurred at any time on and after the Carve-

Out Trigger Date in an aggregate amount not exceeding $1,000,000 for all Retained

Professionals; plus the claims of the Retained Professionals for unpaid fees and expenses which

were incurred at any time on and after the Petition Date and before the Carve-Out Trigger Date

solely to the extent provided for and in compliance with the Budget; provided that, in each case, such fees and expenses of the Retained Professionals are ultimately allowed on a final basis by this Court under sections 330 and 331 of the Bankruptcy Code and are not excluded from the Carve-Out under paragraph 19 of this Interim Order (nothing herein shall waive the right of any party to object to the allowance of any such fees and expenses); (ii) the unpaid fees payable to the U. S. Trustee and Clerk of the Bankruptcy Court pursuant to Section 1930 of Title 28 of the United States Code; provided, however, notwithstanding anything to the contrary, the aggregate maximum amount of the Carve-Out shall not exceed $4,500,000.  So long as the Carve Out Trigger Date has not occurred and be continuing, the Debtors shall be permitted to pay compensation and reimbursement of fees and expenses allowed and payable under 11 U.S.C. §§ 105(a), 330 and 331, as the same may be due and payable, subject to the Budget and the rights of any party in interest to object to the allowance of such fees and expenses.

(b)     Carve-Out Trigger Date.  As used herein, the term "Carve-Out Trigger Date" means the date on which the DIP Agent provides written notice to the Debtors that the Carve-Out is invoked, which notice shall be delivered only on or after the Termination Date. The "Termination Date" shall mean the earlier of the occurrence of (i) an "Event of Default" under the DIP Loan Documents or (ii) a default under any provision of this Interim Order.

(c)     Reduction of Amounts.  The fixed dollar amounts available to be paid under the Carve-Out following the Carve-Out Trigger Date on account of allowed fees and expenses incurred on and after the Carve-Out Trigger Date shall be reduced, dollar-for-dollar, by the aggregate amount of payments made on and after the Carve-Out Trigger Date to the Retained Professionals on account of such allowed fees and expenses (whether from Cash Collateral, any proceeds of the DIP Financing, or otherwise).

(d)     Reservation of Rights.  The payment of any fees or expenses of the

Retained Professionals pursuant to the Carve-Out shall not, and shall not be deemed to,

(i) reduce any Debtor's obligations owed to any of the DIP Agent, DIP Lenders, Pre-Petition

Agents, or Pre-Petition Lenders or (ii) modify, alter or otherwise affect any of the liens and

security interests of such parties in the DIP Collateral or Pre-Petition Collateral (or their

respective claims against the Debtors).  The DIP Agent, DIP Lenders, Pre-Petition Agents, and

Pre-Petition Lenders shall not be responsible for the direct payment or reimbursement of any fees

or disbursements of any Retained Professionals (or of any other entity) incurred in connection

with the Cases or any successor case, and nothing in this Interim Order or otherwise shall be

construed to obligate such parties in any way to pay compensation to or to reimburse expenses of

any Retained Professional or any other entity.

15.     Section 506(c) Surcharge.  Subject to entry of the Final Order, no costs or

expenses of administration or other charge, lien, assessment or claim incurred at any time

(including, without limitation, any expenses set forth in the Budget) by any Debtor or any other

person or entity shall be imposed or charged against any or all of the DIP Collateral, the DIP

Agent, the DIP Lenders, the Pre-Petition Collateral, the Pre-Petition Agents, or Pre-Petition

Lenders or their respective claims under Sections 506(c) or 105(a) of the Bankruptcy Code or

otherwise, and the Debtors, on behalf of their estates, waive any such rights.  It is expressly

understood by all parties that in making all such undertakings and proceeding in compliance with

this Interim Order, each DIP Agent, DIP Lender, Pre-Petition Agent, and Pre-Petition Lender has

relied on the foregoing provisions of this paragraph.  Notwithstanding any approval of or consent

to a Budget, nothing in this Interim Order shall constitute or be deemed to constitute the consent

by any of the DIP Agent, the DIP Lenders, the Pre-Petition Agents, or the Pre-Petition Lenders

to the imposition of any costs or expense of administration or other charge, lien, assessment or claim (including, without limitation, any amounts set forth in the Budget) against such party, its claims or its collateral under sections 105(a), 506(c) or 552(b) of the Bankruptcy Code or otherwise and no such consent shall be implied from any other action or inaction by such parties.

16.     <u>Automatic Perfection</u>.

(a)     The DIP Liens and priority granted to the DIP Agent, for the benefit of the DIP Lenders, pursuant to this Interim Order and the DIP Loan Documents and the Adequate Protection Liens granted to the Pre-Petition Agents, for the benefit of the Pre-Petition Lenders, shall be valid, enforceable, and perfected by operation of law upon entry of this Interim Order by the Court without any further action by any party. The DIP Agent and DIP Lenders in respect of the DIP Liens, and the Pre-Petition Agents and Pre-Petition Lenders in respect of the Adequate Protection Liens, shall not be required to enter into or to obtain any control agreements, landlord waivers, mortgagee waivers, bailee waivers or warehouseman waivers or to give, file or record any UCC-1 financing statements, mortgages, deeds of trust, leasehold mortgages, notices to account debtors or other third parties, notices of lien or similar instruments in any jurisdiction (including filings with the United States Patent and Trademark Office, the United States Copyright Office or any similar agency in respect of trademarks, copyrights, trade names or patents with respect to intellectual property) (collectively, the "<u>Perfection Documents</u>"), or obtain consents from any licensor or similarly situated party in interest, or take any other action in order to validate and to perfect the DIP Liens granted under the DIP Loan Documents and this Interim Order and the Adequate Protection Liens granted under this Interim Order and approved hereby, all of which are automatically perfected by the entry of this Interim Order. If the DIP Agent, DIP Lenders, Pre-Petition Agents, or Pre-Petition Lenders, independently or collectively, in their

sole discretion respectively, choose to obtain, enter into, give, record or file any Perfection Documents, (i) all such Perfection Documents shall be deemed to have been obtained, entered into, given, recorded or filed, as the case may be, as of the Petition Date, (ii) no defect in any such act shall affect or impair the validity, perfection, priority or enforceability of the DIP Liens of the Pre-Petition Liens, and (iii) such liens shall have the relative priority set forth herein notwithstanding the timing of filing of any such Perfection Documents. In lieu of recording or filing any Perfection Documents, the DIP Agent, DIP Lenders, Pre-Petition Agents, or Pre-Petition Lenders may, in their sole discretion, choose to record or file a true and complete copy of this Interim Order in any place that any Perfection Document would or could be recorded or filed (which may include a description of the collateral appropriate to be indicated in a recording or filing at such place of recording or filing), and such recording or filing by the DIP Agent, the DIP Lenders, the Pre-Petition Agents, or the Pre-Petition Lenders shall have the same effect as if such Perfection Document had been filed or recorded as of the Petition Date. In addition, the DIP Agent or Pre-Petition Agents may, in each of their sole discretion and at the Debtors' expense, require the Debtors to file or record any Perfection Document. Upon an Event of Default and the request of the DIP Agent, the Pre-Petition Agents and Pre-Petition Lenders, shall assign, transfer and otherwise convey any Perfection Documents to the DIP Agent for the enforcement or rights and remedies under the DIP Financing Documents until the indefeasible payment in full in cash of all DIP Obligations, and thereafter the DIP Agent shall assign, transfer and otherwise convey such Perfection Documents back to the original holder thereof.

17.   <u>Stipulations and Waivers</u>: Without prejudice to the rights of any other party, including, without limitation, the Committee, the Debtors admit, stipulate, and agree with the DIP Agent, DIP Lenders, Pre-Petition Agents and Pre-Petition Lenders to the following, and

make the releases and waivers set forth below, on and as of the Petition Date:

(a)     <u>Pre-Petition Revolver Agent and Pre-Petition Revolver Lenders</u>.

      (i)     each of the Debtors is jointly and severally indebted and liable to the Pre-Petition Revolver Agent and Pre-Petition Revolver Lenders, without defense, counterclaim or offset of any kind, in the aggregate approximate principal amount of not less than approximately $33,500,000 in respect of the Pre-Petition Revolver Obligations;

      (ii)     the Pre-Petition Revolver Liens are (i) valid, binding, perfected, enforceable, first priority liens on and security interests in the Pre-Petition Revolver Collateral, (ii) not subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law and (iii) subject only to (A) after giving effect to this Interim Order, the DIP Obligations, the DIP Liens, the DIP Superpriority Claim, and the Carve-Out, (B) subject to the Intercreditor Agreement and (C) valid, enforceable, and non-avoidable liens on and security interests in the Pre-Petition Revolver Collateral that (x) are permitted under the Pre-Petition Revolver Loan Documents, (y) were perfected prior to the Petition Date (or perfected on or after the Petition Date to the extent permitted by Section 546(b) of the Bankruptcy Code), and (z) are not subject to avoidance, disallowance, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law;

      (iii)     the Pre-Petition Revolver Obligations constitute the legal, valid and binding obligations of the Debtors, enforceable in accordance with their terms (other than in respect of the stay of enforcement arising under section 362 of the Bankruptcy Code) and no portion of the Pre-Petition Revolver Obligations is subject to avoidance, recharacterization, disgorgement, recovery or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law;

      (iv)     the Debtors do not have, and hereby forever release and waive, any claims, counterclaims, causes of action, defenses or setoff rights, whether arising under the Bankruptcy Code or applicable non-bankruptcy law, against the Pre-Petition Revolver Agent and the Pre-Petition Revolver Lenders arising from or related to the Pre-Petition Revolver Obligations and Pre-Revolver Loan Documents from the beginning of time; and

      (v)     all or substantially all of the Debtors' cash existing as of the Petition Date, except for proceeds of the DIP Facility, including without limitation, all cash and other amounts on deposit or maintained by the Debtors in any account or accounts with any

Pre-Petition Revolver Agent, constitutes Cash Collateral of the Pre-Petition Revolver Agent and Pre-Petition Revolver Lenders.

(vi) The Debtors acknowledge and stipulate that the Debtors are in default of their debts and obligations under the Pre-Petition Revolver Loan Documents.

(b) <u>Pre-Petition Term Loan Agent and Pre-Petition Term Loan Lenders</u>.

(i) each of the Debtors is jointly and severally indebted and liable to the Pre-Petition Term Loan Agent and Pre-Petition Term Loan Lenders, without defense, counterclaim or offset of any kind, in the aggregate principal amount of not less than approximately $16,000,000 in respect of the Pre-Petition Term Loan Obligations;

(ii) the Term Liens are (i) valid, binding, perfected, enforceable, second priority liens on and security interests in the Pre-Petition Term Loan Collateral, (ii) not subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law and (iii) subject only to (A) after giving effect to this Interim Order, the DIP Obligations, the DIP Liens, the DIP Superpriority Claim and the Carve-Out, (B) subject to the Intercreditor Agreement, and (C) valid, enforceable, and non-avoidable liens on and security interests in the Pre-Petition Term Loan Collateral that (x) are permitted under the Pre-Petition Term Loan Documents, (y) were perfected prior to the Petition Date (or perfected on or after the Petition Date to the extent permitted by Section 546(b) of the Bankruptcy Code), and (z) are not subject to avoidance, disallowance, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law;

(iii) the Pre-Petition Term Loan Obligations constitute the legal, valid and binding obligations of the Debtors, enforceable in accordance with their terms (other than in respect of the stay of enforcement arising under section 362 of the Bankruptcy Code) and no portion of the Pre-Petition Term Loan Obligations is subject to avoidance, recharacterization, disgorgement, recovery or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law;

(iv) the Debtors do not have, and hereby forever release and waive, any claims, counterclaims, causes of action, defenses or setoff rights, whether arising under the Bankruptcy Code or applicable non-bankruptcy law, against the Pre-Petition Term Loan Agent and the Pre-Petition Term Loan Lenders arising from or related to the Pre-Petition Term Loan Obligations or the Pre-Petition Term Loan Documents from the beginning of time; and

(v) all or substantially all of the Debtors' cash existing as of the

Petition Date, except for proceeds of the DIP Facility, including without limitation, all cash and other amounts on deposit or maintained by the Debtors in any account or accounts with any Pre-Petition Revolver Agent, constitutes Cash Collateral of the Pre-Petition Term Loan Agent and Pre-Petition Term Loan Lenders.

(vi) The Debtors acknowledge and stipulate that the Debtors are in default of their debts and obligations under the Pre-Petition Term Loan Documents.

Subject to the rights of parties in interest, including, without limitation, the Committee, as set forth in the immediately succeeding paragraph, the foregoing admissions, stipulations, agreements, releases, and waivers are and shall be binding on the Debtors, any subsequent trustee, responsible person, examiner with expanded powers, or other Estate representative and all of their successors-in-interest and assigns.

18. Effect of Stipulations on Other Parties.

(a) Generally. The stipulations, admissions, releases and waivers of and by the Debtors of the matters contained in the immediately preceding paragraph of this Interim Order (collectively, the "Lien and Claim Perfection Matters") shall be binding on all parties-in-interest, including, without limitation, the Committee (and any subsequent trustee, responsible individual, examiner with expanded powers or other representative of the Debtors' Estates), unless, and solely to the extent that, (a) the Committee or any other party-in-interest with standing and requisite authority, has timely filed the appropriate pleadings, and timely commenced the appropriate proceeding, required under the Bankruptcy Code and Bankruptcy Rules, including, without limitation, as required pursuant to Part VII of the Bankruptcy Rules (in each case subject to the limitations set forth in paragraph 19 of this Interim Order) challenging the Lien and Claim Perfection Matters by no later than the earlier of (i) seventy-five (75) days after the Petition Date or (ii) sixty (60) days after the appointment of the Committee (as such applicable date may be extended from time to time in the sole discretion of the Pre-Petition

Agents, the "Challenge Deadline" or by the Court for good cause shown), and (b) this Court rules in favor of the plaintiff or movant in any such timely and properly commenced proceeding and any such ruling is not subject to any further review or appeal.

      (b)     <u>Binding Effect</u>. To the extent no such proceeding is timely and properly commenced by the Challenge Deadline, or to the extent such proceeding does not result in a final and non-appealable order of this Court that is inconsistent with the Lien and Claim Perfection Matters, then, without further notice, motion or application to, order of, or hearing before, this Court and without the need or requirement to file any proof of claim, the Lien and Claim Perfection Matters shall become binding, conclusive and final on the Committee and any other person, entity or party-in-interest in the Cases, and their successors and assigns, and in any successor case for all purposes and shall not be subject to challenge or objection by any party-in-interest, including a trustee, responsible individual, examiner with expanded powers or other representative of the Estates. Notwithstanding anything to the contrary herein, if any such proceeding is properly and timely commenced, the Lien and Claim Perfection Matters shall nonetheless remain binding on all parties-in-interest and preclusive as provided in sub-paragraph (a) above except to the extent that such Lien and Claim Perfection Matters are expressly challenged in such proceeding. To the extent any such proceeding is timely commenced the Pre-Petition Agents or Pre-Petition Lenders, as applicable, shall be entitled to include the related costs and expenses, including but not limited to reasonable attorneys' fees, incurred in defending themselves in any such proceeding.

      (c)     <u>No Standing</u>. Nothing in this Interim Order confers or vests standing on the Committee or any other party-in-interest to assert any claim on behalf of any Debtor or any estate of any Debtor, or relieves the Committee or any other party-in-interest from any

requirement under the Bankruptcy Code or otherwise to obtain authorization and standing from the Court prior to asserting any claim on behalf of any Debtor or any Estate of any Debtor.

19. <u>Limitation on use of Proceeds</u>. Notwithstanding anything herein to the contrary, no portion or proceeds of the DIP Facility, the DIP Collateral, the Pre-Petition Collateral, the Cash Collateral, or the Carve-Out, and no disbursements set forth in the Budget, shall be used for the payment of professional fees, disbursements, costs or expenses incurred in connection with: (a) objecting, contesting or raising any defense to the validity, perfection, priority, or enforceability of, or any amount due under, the DIP Loan Documents or the Pre-Petition Loan Documents or any security interests, liens or claims granted under this Interim Order, the DIP Loan Documents, or the Pre-Petition Loan Documents to secure such amounts; (b) asserting any claims, actions or causes of action against any of the DIP Agent, the DIP Lenders, the Pre-Petition Agents, or the Pre-Petition Lenders or any of their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors; (c) preventing, hindering or otherwise delaying the assertion, enforcement or realization on the DIP Collateral or the Pre-Petition Collateral by the DIP Agent and the Pre-Petition Agents in accordance with the terms and conditions of this Interim Order or the applicable loan and lien documents; or (d) seeking to amend or modify any of the rights granted to the DIP Agent, the DIP Lenders, the Pre-Petition Agents, or the Pre-Petition Lenders under this Interim Order, the DIP Loan Documents or the Pre-Petition Loan Documents, in each case without such party's prior written consent given in its sole discretion; <u>provided</u>, <u>however</u>, that no more than $50,000 in the aggregate of the proceeds of the DIP Facility, the DIP Collateral, the Pre-Petition Collateral, the Cash Collateral, and the Carve-Out may be used by the Committee to investigate (but not prosecute) Lien and Claim Perfection Matters.

20.     <u>Cash Collateral</u>.  For purposes of this Interim Order, the term "<u>Cash Collateral</u>" shall mean and include all "cash collateral" as defined by section 363(a) of the Bankruptcy Code.  Without limiting the generality of the foregoing, Cash Collateral shall include all of the cash proceeds of Pre-Petition Collateral in which the Pre-Petition Agents or the Pre-Petition Lenders have an interest, whether such interest existed as of the Petition Date or arises thereafter pursuant to this Interim Order, any other order of this Court, applicable law or otherwise; <u>provided</u>, <u>however</u>, Cash Collateral of the Pre-Petition Lenders shall not include loan proceeds of the DIP Facility.  Proceeds of the DIP Facility and DIP Collateral constituting cash or cash equivalents or proceeds, rents, profits or offspring of DIP Collateral or otherwise within the definition set forth in section 363(a) of the Bankruptcy Code shall be the Cash Collateral of the DIP Agent, DIP Lenders, Pre-Petition Agents, and Pre-Petition Lenders, the use of which is subject to the express written consent of the DIP Agent and Pre-Petition Agents, which is hereby given through the Termination Date subject to compliance with all of the terms set forth herein and in the DIP Loan Documents and this Interim Order.

21.     <u>Use of Pre-Petition Collateral (including Cash Collateral)</u>.  The Debtors are hereby authorized to use the Pre-Petition Collateral, including the Cash Collateral, during the period from the Petition Date through and including the Termination Date in accordance with the terms and conditions of this Interim Order and the DIP Loan Documents (including the Budget), provided that, the Pre-Petition Agents and Pre-Petition Lenders are granted adequate protection as set forth in paragraph 22 below.  In no event shall the Debtors be authorized to use the Cash Collateral for any purpose or under any terms other than those set forth herein, including, without limitation, the Budget, or as may otherwise be approved by this Court following notice and hearing as may be required.

22.     <u>Adequate Protection</u>.  This Court finds that the adequate protection provided below is reasonable and sufficient to protect the interests of the Pre-Petition Agents and the Pre-Petition Lenders.  Notwithstanding any other provision hereof, subject to the terms of the Intercreditor Agreement, the grant of adequate protection to the Pre-Petition Agents and the Pre-Petition Lenders pursuant hereto is without prejudice to the right of the Pre-Petition Agents to seek modification of the grant of adequate protection provided hereby so as to provide different or additional adequate protection, and without prejudice to the right of the Debtors or any other party in interest to contest any such modification.

(a)     <u>Adequate Protection Liens</u>.  As adequate protection of the Pre-Petition Revolver Liens and Pre-Petition Term Loan Liens under the applicable Pre-Petition Loan Documents, in accordance with sections 363(e) and 364(d) of the Bankruptcy Code, each of the Pre-Petition Agents shall be granted (for the ratable benefit of the respective Pre-Petition Lenders) valid, binding, enforceable and perfected security interests and liens upon (the "<u>Adequate Protection Liens</u>") all property of the Debtors whether arising pre-petition or post-petition of any nature whatsoever, wherever located, and, subject to entry of a Final Order, upon the proceeds of Avoidance Actions, in each case to secure an amount of Pre-Petition Obligations equal to the sum (the "<u>Adequate Protection Obligations</u>") of, without duplication, the aggregate diminution, if any, subsequent to the Petition Date, in the value of the Pre-Petition Collateral (with such Adequate Protection Liens and Adequate Protection Obligations of the Pre-Petition Agents and Pre-Petition Lenders being in all respects subject to the Intercreditor Agreement), by: (a) the reduction in such Pre-Petition Agents' and Pre-Petition Lenders' interest in the Pre-Petition Collateral available to satisfy Pre-Petition Obligations as a consequence of the priming of the Pre-Petition Obligations by the DIP Obligations authorized hereunder; (b) depreciation,

use, sale, loss, decline in market price or otherwise (other than by payment of the Pre-Obligations not secured by the Adequate Protection Liens) of the Pre-Petition Collateral; and (c) the sum of the aggregate amount of all Cash Collateral and the aggregate value of all non-cash Pre-Petition Collateral which is applied in payment of the DIP Obligations or any other obligations or expenses of the Debtors other than Pre-Petition Obligations but only to the extent of any decrease in the value of the Pre-Petition Collateral on account of subsections (a), (b) and (c) above.  The Adequate Protection Liens are (x) subject only to (A) the Carve-Out, (B) the DIP Obligations, DIP Liens and DIP Superpriority Claim, and (C) permitted liens under the DIP Loan Documents; and (y) senior and superior, pursuant to sections 361, 363(e) and 364(d) of the Bankruptcy Code, to the Pre-Petition Liens in the Pre-Petition Collateral.  None of the Adequate Protection Liens or Adequate Protection Obligations shall (a) be subject to any lien or security interest that is avoided and preserved for the benefit of the Estates under section 551 of the Bankruptcy Code, (b) subject to any inter-company claim, whether secured or unsecured, of any Debtor or any domestic or foreign subsidiary or affiliate of any Debtor, or (c) hereafter be subordinated to or made pari passu with any other lien or security interest under sections 361, 363 or 364 of the Bankruptcy Code or otherwise except as expressly provided in this Interim Order.

      (b)    507(b) Claim.  To the extent the Pre-Petition Revolver Agent and/or the Pre-Petition Term Loan Agent shall hold a claim allowable under section 507(a)(2) of the Bankruptcy Code, notwithstanding the provision of adequate protection hereunder, each of the Pre-Petition Revolver Agent and the Pre-Petition Term Loan Agent are hereby granted, respectively, for the ratable benefit of the Pre-Petition Revolver Lenders and Pre-Petition Term Loan Lenders an administrative expense claim pursuant to Section 507(b) (each, a "Section

507(b) Claim") of the Bankruptcy Code with priority over all other administrative expenses, whether arising under Sections 364(c)(1), 507(b) or otherwise, but in all cases subordinate to the DIP Obligations, DIP Liens, DIP Superpriority Claim, and the Carve-Out.

        (c)    Adequate Protection Payments. The Debtors shall, in accordance with the Budget, with respect to the Pre-Petition Revolver Agent and Pre-Petition Revolver Lenders: (i) pay all reasonable fees and expenses under the Pre-Petition Loan Documents (including, but not limited to, the reasonable fees and expenses of counsel and financial advisors, respectively, of the Pre-Petition Agents) incurred by the Pre-Petition Agents, whether incurred prior to or following the Petition Date, (ii) pay interest under the Pre-Petition Loan Documents at the applicable rate at the intervals provided under the Pre-Petition Loan Documents, (iii) repayment of the Pre-Petition Revolving Obligations under paragraph 5 of this Interim Order, and (iv) payment of the fees set forth in the fee letter of the Pre-Petition Term Loan Agent (the "GB Fee Letter"). The payments under this paragraph shall be referred to collectively as the "Adequate Protection Payments." None of such fees, costs and expenses payable pursuant to this paragraph shall be subject to separate approval by this Court (but this Court shall resolve any dispute as to the reasonableness of any such legal fees and expenses). The Debtors shall pay the fees, costs and expenses provided for in this paragraph promptly after the invoices for such fees and expenses shall have been submitted to the Debtors (invoices of professional advisors may be redacted to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine). No advisor to the Pre-Petition Agents or Pre-Petition Lenders shall be required to file an application seeking compensation for services or

reimbursement of expenses with the Court.  The Debtors shall promptly provide copies of such

invoices to the respective counsel to the DIP Agent and the Committee (following its

appointment).  Statements for compensation for services and reimbursement of expenses of

professionals provided for herein shall be delivered to the DIP Agent and the Committee with ten

(10) days notice and opportunity to object.  In the event any Adequate Protection Payment would

be required to be repaid to the Debtors as a result of application of Section 506(b) or otherwise,

any such amounts shall not be repaid and instead shall be applied to outstanding obligations as

follows:  first, to the DIP Obligations until such obligations are indefeasibly paid in full in cash

on a final basis; and second, to the Pre-Petition Obligations until such obligations are

indefeasibly paid in full in cash on a final basis.

      (d)    Insurance.  The Debtors shall maintain insurance in accordance with the

DIP Credit Agreement, including section 6.5 thereof, and if the DIP Obligations are indefeasibly

paid in full in cash, such requirement to maintain insurance shall survive the termination of the

DIP Credit Agreement, and all references to the terms "Lenders" or "Required Lenders" therein

(or any defined term used therein) shall be deemed to have the meanings given thereto in the Pre-

Petition Term Loan Agreement.

      (e)    Reports.  The Debtors shall deliver to the Pre-Petition Agents such reports,

data and other information required to be delivered to the DIP Agent pursuant to the DIP Credit

Agreement, including, without limitation, sections 6.3(b), 6.8, 6.11 and 6.24 thereof, at the same

time and in the same form delivered to the DIP Agent, and if the DIP Obligations are

indefeasibly paid in full in cash, such reporting requirements shall survive the termination of the

DIP Credit Agreement, and all references to the terms "Lenders" or "Required Lenders" therein

(or any defined term used therein) shall be deemed to have the meanings given thereto in the Pre-

Petition Term Loan Agreement.

(f)     Subject to the terms of the DIP Facility, nothing in this section is meant to or shall modify the terms or application of the Intercreditor Agreement, which shall remain in full force and effect. Without limiting the generality of the foregoing, the Adequate Protection Liens granted to the Pre-Petition Agents, for the ratable benefit of the Pre-Petition Lenders, and the Section 507(b) claim in favor of the Pre-Petition Agents, for the ratable benefit of the Pre-Petition Lenders, shall have the relative priorities as between such parties as set forth in the Intercreditor Agreement.

23.     <u>Indemnification</u>. The Debtors shall indemnify the DIP Agent, the DIP Lenders, the Pre-Petition Agents, and the Pre-Petition Lenders, and each of their respective affiliates, successors and assigns and the officers, directors, employees, agents, advisors, controlling persons and members of each of the foregoing (each, an "<u>Indemnified Person</u>") and hold each of them harmless from and against all costs, expenses (including reasonable fees, disbursements and other charges of counsel) and liabilities of such Indemnified Person arising out of or relating to any claim or any litigation or other proceeding (regardless of whether such Indemnified Person is a party thereto and regardless of whether such matter is initiated by a third party or by the Debtors or any of their affiliates or shareholders) that relates to the DIP Facility or this Interim Order, including the financing contemplated hereby, the Cases, or any transactions in connection therewith, provided that no Indemnified Person will be indemnified for any cost, expense or liability to the extent determined in a final, non-appealable judgment of a court of competent jurisdiction to have resulted primarily from its gross negligence or willful misconduct. In addition, all out-of-pocket expenses of the DIP Agent and the Pre-Petition Agents shall be payable by the Debtors promptly upon written demand, whether or not the

transactions contemplated hereby are consummated. Nothing herein is meant to limit the scope of any indemnity provided for the benefit of (i) the DIP Agent or DIP Lenders in the DIP Loan Documents and (ii) the Pre-Petition Agents or Pre-Petition Lenders in the Pre-Petition Loan Documents.

24.     Payments on Account of the DIP Facility.  Payments delivered by the Debtors and received by the DIP Agent for the benefit of itself and the DIP Lenders shall be applied in accordance with the terms of the DIP Loan Documents and this Interim Order.

25.     Remedies.

(a)     Except as set forth in sub-paragraph (b) of this paragraph, which sub-paragraph exclusively governs the applicability of the automatic stay to any action by DIP Agent or Pre-Petition Agents to foreclose on its security interests in and liens on any DIP Collateral granted hereunder, the Court hereby orders that (x) the automatic stay pursuant to section 362 of the Bankruptcy Code is hereby modified so as to permit the DIP Agent to perform the actions described in or permitted by this Interim Order, in each case without further notice, application or motion to, or order from the Court, and (y) neither section 105 of the Bankruptcy Code nor any other provision of the Bankruptcy Code or applicable law shall be utilized to prohibit such party's exercise, enjoyment and enforcement of any of such rights, benefits, privileges and remedies regardless of any change in circumstances (whether or not foreseeable). The DIP Agent is hereby granted leave to (i) receive and apply payments of the DIP Obligations and proceeds of the DIP Collateral, as applicable, (ii) file or record any Perfection Documents, financing statements, mortgages or other instruments or other documents to evidence the DIP Liens, (iii) charge and collect any interest (including at the default rate to the extent authorized herein), fees, costs and other expenses accruing at any time under this Interim Order or the DIP

Loan Documents, as applicable and to the extent authorized herein, (iv) give the Debtors any notice or take any other action provided for in this Interim Order or the DIP Loan Documents, as applicable, or otherwise available at law or in equity and (v) upon the Termination Date, and in each case without further notice, motion or application to, order of, or hearing before, this Court: (A) terminate the DIP Credit Agreement and/or the other DIP Loan Documents, (B) cease making financial accommodations and/or suspend or terminate its lending commitments to the Debtors and terminate the Debtors' authority to use proceeds of the DIP Facility and Cash Collateral (as it constitutes DIP Collateral), (C) accelerate any or all of the DIP Obligations and declare such DIP Obligations to be immediately due and payable in full, in cash, and/or (D) revoke the Debtor's right, if any, to use the DIP Collateral and proceeds of the DIP Collateral or the Cash Collateral (as it constitutes DIP Collateral) pursuant to this Interim Order. In addition, subject and subordinate to the rights of the DIP Agent and DIP Lenders until the DIP Obligations are indefeasibly paid in full in cash, the Pre-Petition Agents are hereby granted leave to (i) receive and apply payments of the Pre-Petition Obligations and proceeds of Pre-Petition Collateral, as applicable, (ii) file or record any Perfection Documents, financing statements, mortgages or other instruments or other documents to evidence the Adequate Protection Liens, (iii) charge and collect any interest (including at the default rate to the extent authorized herein), fees, costs and other expenses accruing at any time under this Interim Order or the Pre-Petition Loan Documents, as applicable and to the extent authorized herein, and (iv) give the Debtors any notice or take any other action provided for in this Interim Order or the Pre-Petition Loan Documents, as applicable, or otherwise available at law or in equity.

(b)     Upon the Termination Date, and after providing three (3) business days prior notice and opportunity to object to respective counsel to the Debtors, the Committee, the

Pre-Petition Agents and the U.S. Trustee, the DIP Agent, for the benefit of the DIP Lenders, shall be entitled to (i) foreclose upon the DIP Collateral or otherwise enforce the DIP Obligations, DIP Liens and DIP Superpriority Claim on any or all of the DIP Collateral (ii) exercise any other default-related remedies under the DIP Loan Documents, this Interim Order or applicable law in seeking to recover payment of the DIP Obligations and (iii) the DIP Agent, for the benefit of the DIP Lenders (and, after the DIP Obligations are indefeasibly paid in full in cash, the Pre-Petition Agents for the benefit of the Pre-Petition Lenders), in its sole and absolute discretion, may compel the Debtors to move for authority from this Court to sell or otherwise dispose of all or any portion of the Collateral pursuant to section 363 (or any other applicable provision) of the Bankruptcy Code, and none of the Debtors, the Pre-Petition Agents, the Pre-Petition Lenders or the Committee, shall object to such sale(s) or other disposition(s); provided that such parties in interest may object to the sale procedures submitted to this Court for approval in respect to any such sale or other disposition. For the avoidance of doubt, the sale or disposition of any or all of the assets of the Debtors pursuant to section 363 (or any other applicable provision) of the Bankruptcy Code shall not, under the laws of any jurisdiction in which any asset is located or to which any asset or any creditor's rights with respect to such asset is or may be subject, result in the waiver of the deficiency claim (if any) of any DIP Lender or Pre-Petition Lender regardless of whether such DIP Lender or Pre-Petition Lender, as applicable, supports or opposes such sale or disposition, and regardless of whether such DIP Lender or Pre-Petition Lender, as applicable, credit bids its interest in respect of such sale or disposition. During the three (3) business day notice period, the Debtors may seek an order of the Court staying the exercise of such remedies by the DIP Agent or Pre-Petition Agents against the Collateral and, if no such order is obtained, then the DIP Agent (and, after the DIP Obligations

are indefeasibly paid in full in cash, the Pre-Petition Agents for the benefit of the Pre-Petition Lenders) may exercise any and all such rights and remedies without further order of the Court or notice to any party. The parties acknowledge and agree that the only issue to be determined and decided at a Court hearing in opposition to the exercise of rights by the DIP Agent and DIP Lenders (and, after the DIP Obligations are indefeasibly paid in full in cash, the Pre-Petition Agents and Pre-Petition Lenders) is whether and Event of Default or Termination Date has occurred and is continuing.

26. <u>Access to DIP Collateral – No Landlord's Liens</u>. Notwithstanding anything contained herein to the contrary and without limiting any other rights or remedies of the DIP Agent, exercisable on behalf of the DIP Lenders, contained in this Interim Order or the DIP Loan Documents, or otherwise available at law or in equity, and subject to the terms of the DIP Loan Documents, upon written notice to the landlord of any leased premises that an Event of Default or the Termination Date has occurred and is continuing under the DIP Loan Documents, the DIP Agent (and, following the indefeasible payment in full in cash of the DIP Obligations, the Pre-Petition Agents) may, subject to the applicable notice provisions, if any, in this Interim Order and any separate agreement by and between such landlord and the DIP Agent (and, following the indefeasible payment in full in cash of the DIP Obligations, the Pre-Petition Agents), enter upon any leased premises of the Debtors or any other party for the purpose of exercising any remedy with respect to DIP Collateral (and, following the indefeasible payment in full in cash of the DIP Obligations, the Collateral) located thereon and shall be entitled to all of the Debtors' rights and privileges as lessee under such lease without interference from the landlords thereunder, <u>provided</u> <u>that</u> the DIP Agent (and, following the indefeasible payment in full in cash of the DIP Obligations, the Pre-Petition Agents) shall only be obligated to pay rent of

the Debtors that first accrues after the DIP Agent's written notice (and, following the indefeasible payment in full in cash of the DIP Obligations, the Pre-Petition Agents' notice) referenced above and that is payable during the period of such occupancy by the DIP Agent (and, following the indefeasible payment in full in cash of the DIP Obligations, the Pre-Petition Agents), calculated on a per diem basis. Nothing herein shall require the DIP Agent (and, following the indefeasible payment in full in cash of the DIP Obligations, the Pre-Petition Agents) to assume any lease as a condition to the rights afforded to the DIP Agent (and, following the indefeasible payment in full in cash of the DIP Obligations, the Pre-Petition Agents) in this paragraph. Furthermore, any landlord's lien, right of distraint or levy, security interest or other interest that any landlord, warehousemen or landlord's mortgagee may have in any Collateral of the Debtors located on such leased premises, to the extent the same is not void under section 545 of the Bankruptcy Code, is hereby subordinated to the DIP Obligations, DIP Liens, DIP Superpriority Claim and Pre-Petition Obligations.

27. <u>Insurance Policies</u>. Effective as of entry of this Interim Order, the DIP Agent, DIP Lenders, Pre-Petition Agents, and Pre-Petition Lenders shall be, and shall be deemed to be, without any further action or notice, named as additional insureds and loss payees on each insurance policy maintained by the Debtors that in any way relates to DIP Collateral or Pre-Petition Collateral, as applicable.

28. <u>Successors and Assigns</u>. The DIP Credit Agreement and the other DIP Loan Documents and the provisions of this Interim Order shall be binding upon all parties in interest in these Cases, including any subsequently appointed trustee, responsible individual, examiner with expanded powers, or other Estate representative. The benefits hereof shall inure solely to the Pre-Petition Agents, Pre-Petition Lenders, DIP Agent, DIP Lenders, and the

Debtors, and each of their respective successors and assigns and, with respect to the Challenge Deadline and Carve-Out, the Committee.

29.     Survival.  The provisions of this Interim Order and any actions taken pursuant hereto shall survive the entry of any order, and the rights, remedies, powers, privileges, liens and priorities of the DIP Agent, DIP Lenders, Pre-Petition Agents, and Pre-Petition Lenders provided for in this Interim Order and in any DIP Loan Document or Pre-Petition Loan Document, as applicable, shall not be modified, altered or impaired in any manner by any order, including any order (i) confirming any plan of reorganization or liquidation in any of the Cases (and, to the extent not indefeasibly paid in full in cash, the DIP Obligations and Pre-Petition Obligations shall not be discharged by the entry of any such order, or pursuant to section 1141(d)(4) of the Bankruptcy Code, each of the Debtors having hereby waived such discharge); (ii) converting any of the Cases to a Chapter 7 case; or (iii) dismissing any of the Cases.  The terms and provisions of this Interim Order as well as the DIP Obligations, DIP Liens, DIP Superpriority Claim, DIP Loan Documents, Pre-Petition Obligations, Pre-Petition Liens and Adequate Protection Liens shall continue in full force and effect notwithstanding the entry of any such order, and such rights, claims and liens shall maintain their priority as provided by this Interim Order, the DIP Loan Documents and Pre-Petition Loan Documents and to the maximum extent permitted by law until all of the DIP Obligations and Pre-Petition Obligations, as the case may be, are indefeasibly paid in full, in cash.

30.     Subsequent Reversal or Modification.  This Interim Order is entered pursuant to section 364 of the Bankruptcy Code, granting the DIP Lenders and Pre-Petition Lenders, as applicable, all of the protections afforded by the Bankruptcy Code, including protection under Bankruptcy Code section 364(e).  If any or all of the provisions of this Interim

Order are hereafter reversed, modified, vacated or stayed, that action will not affect (i) the validity of any obligation, indebtedness or liability incurred post-petition hereunder by the Debtors to the DIP Agent or DIP Lenders (or to the Pre-Petition Agents or Pre-Petition Lenders, as applicable) prior to the date of receipt of written notice to the DIP Agent and DIP Lenders (or to the Pre-Petition Agents or Pre-Petition Lenders, as applicable) of the effective date of such action; or (ii) the validity and enforceability of any lien, administrative expense, right, or priority authorized or created hereby or pursuant to the DIP Loan Documents, including the DIP Obligations, DIP Liens and DIP Superpriority Claim or to the Pre-Petition Loan Documents, including the Adequate Protection Obligations. Notwithstanding any such reversal, stay, modification or vacatur, any post-petition indebtedness, obligation or liability incurred by the Debtors to the DIP Agent and DIP Lenders (or to the Pre-Petition Agents or Pre-Petition Lenders, as applicable), prior to written notice to the DIP Agent and DIP Lenders (or to the Pre-Petition Agents or Pre-Petition Lenders, as applicable) of the effective date of such action, shall be governed in all respects by the original provisions of this Interim Order, and the DIP Agent, DIP Lenders, Pre-Petition Agents and Pre-Petition Lenders shall be entitled to all the rights, remedies, privileges and benefits granted herein and in the DIP Loan Documents with respect to all such indebtedness, obligation or liability.

31.     No Waiver.  This Interim Order shall not be construed in any way as a waiver or relinquishment of any rights that the DIP Agent or DIP Lenders or, subject to the Intercreditor Agreement, the Pre-Petition Agents or Pre-Petition Lenders may have to bring or be heard on any matter brought before the Court.  Any consent, modification, declaration of default, or exercise of remedies under or in connection with this Interim Order or the DIP Loan Documents shall require the approval of DIP Agent, and, as and to the extent required by the

voting provisions of the DIP Credit Agreement and shall be in accordance with this Interim Order, including, without limitation, with respect to modifications, paragraph 12 hereof. Nothing contained in this Interim Order, shall impair, prejudice or modify any rights, claims or defenses available in law or equity to the DIP Agent on behalf of the DIP Lenders, or Pre-Petition Agents on behalf of the Pre-Petition Lenders, including, without limitation, the right to (a) request conversion of the Debtors' chapter 11 case to chapter 7, (b) seek to terminate the exclusive rights of the Debtors to file, and solicit acceptances of, a plan of reorganization under section 1121 of the Bankruptcy Code or propose, subject to the provisions of Section 1121 of the Bankruptcy Code, a chapter 11 plan or plans, (c) object to the fees and expenses of any retained professionals of the Debtors or Committee (or to the reasonableness of the post-petition fees and expenses of any advisors retained by the Pre-Petition Agents under this Interim Order), and (d) seek relief from the automatic stay. All such rights, claims and defenses, and the rights, objections and defenses of all parties in connection therewith, are hereby reserved. The failure of the DIP Agent, DIP Lenders, Pre-Petition Agent or Pre-Petition Lenders to seek relief or take any action or otherwise exercise any of their rights and remedies shall not constitute a waiver of any of their rights.

32. <u>Additional Defaults</u>. In addition and without limitation of the Events of Default set forth in and defined in the DIP Loan Documents or this Interim Order, it shall be a default hereunder (and constitute an "Event of Default" under the DIP Loan Documents) if (a) an order is entered dismissing or converting any of the Cases under section 1112 of the Bankruptcy Code or appointing a Chapter 11 trustee or an examiner with expanded powers, (b) a sale of substantially all of the assets of the Debtors is proposed that would not indefeasibly pay the DIP Obligations in full in cash, (c) any other motion is filed by the Debtors for any relief directly or

indirectly materially impairing the DIP Collateral unless all DIP Obligations have been indefeasibly paid in final, in full, in cash, and completely satisfied upon consummation of the transaction contemplated thereby, (d) the Debtors fail to comply with any of the terms of this Interim Order, including the Budget, or any stipulation, representation or covenant by the Debtors stated herein is false or misleading, or (e) the Debtors fail to achieve the plan of reorganization and other milestones as set forth in the DIP Loan Documents, including sections 9.1(s) of the DIP Credit Agreement, which milestones shall be in form and substance acceptable to the Pre-Petition Agents and any modifications of such milestones shall be in form and substance acceptable to the Pre-Petition Agents.. Any order for dismissal or conversion shall be automatically deemed to preserve the rights of the DIP Agent and DIP Lenders, and Pre-Petition Agents and Pre-Petition Lenders, under this Interim Order and shall preserve the Carve-Out. No order providing for the sale of substantially all of the assets of the Debtors under section 363 of the Bankruptcy Code shall be entered by the Court unless, upon the closing of such transaction, all liens securing the DIP Obligations are transferred to the proceeds of such sale and such proceeds are applied to permanently and indefeasibly repay the DIP Obligations in final, in full, in cash. If an order dismissing any of these Cases under section 305 or 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall be deemed to provide that (a) the DIP Liens and DIP Superpriority Claim granted to the DIP Lenders hereunder and in the DIP Loan Documents, as the case may be, and the Carve-Out shall continue in full force and effect, shall remain binding on all parties in interest and shall maintain their priorities as provided in this Interim Order until all DIP Obligations and indebtedness owing to the DIP Lenders under the DIP Loan Documents shall have been indefeasibly paid in final, in full, in cash and the DIP Lenders' obligations and commitments under the DIP Loan Documents shall have been

terminated, and the Court shall retain jurisdiction, notwithstanding such dismissal, for purposes of enforcing the DIP Obligations, DIP Liens, DIP Superpriority Claim, and Adequate Protection Liens.

33. _Headings_. The headings in this Interim Order are for reference purposes only and will not in any way affect the meaning and interpretation of the terms of this Interim Order.

34. _Order Governs_. In the event of any conflict between the provisions of this Interim Order and the DIP Loan Documents, the provisions of this Interim Order shall control and govern to the extent of such conflict.

35. _Right to Credit Bid_. In all events, pursuant to Section 363(k) of the Bankruptcy Code, the DIP Agent with respect DIP Obligations and the Pre-Petition Agents, subject and subordinate to the prior indefeasible payment in full in cash of the DIP Obligations, with respect to the Pre-Petition Obligations, shall the right to credit bid with respect to any bulk or piecemeal sale of all or any portion of the Collateral.

36. _No Marshaling_. None of the DIP Agent, DIP Lenders, DIP Collateral, the Pre-Petition Agents, Pre-Petition Lenders, or Pre-Petition Collateral shall be subject to the doctrine of marshaling.

37. _Intercreditor Agreement_. Notwithstanding anything in this Order or any DIP Loan Document to the contrary, the Debtors, DIP Agent, DIP Lenders, Pre-Petition Agents, and Pre-Petition Agents expressly acknowledge, stipulate and agree that each of them is and shall be bound by, and in all respects the DIP Facility shall be governed by, and subject to all of the terms, provisions and restrictions of the Intercreditor Agreement, except as expressly modified by this Interim Order.

38. <u>Immediate Docketing and Effect of Order</u>. The Clerk of the Court is hereby directed to forthwith enter this Interim Order on the docket of this Court maintained in regard to the chapter 11 case. This Interim Order shall be effective upon its entry and not subject to any stay (notwithstanding anything to the contrary contained in the Bankruptcy rules including Bankruptcy Rule 4001(a)(3)).

39. <u>Final Hearing</u>. The motion is set for a final hearing (the "<u>Final Hearing</u>") to be held at [_____] [a.m./p.m.] (Prevailing Eastern Time) on [_____], 2009 with an objection deadline of 4:00 p.m. (Prevailing Eastern Time) on [_____], 2009 (the "<u>Objection Deadline</u>"). Any objection to entry of the Final Order shall be filed with this Court, and served upon the respective counsel to the Debtors, the U.S. Trustee, the Committee, the DIP Agent and the Pre-Petition Agents so as to be actually received on or before the Objection Deadline. The Debtors shall promptly mail copies of this Interim Order (which shall constitute adequate notice of the Final Hearing) to the Notice Parties and to the Committee after the same has been appointed, or Committee counsel, if the same shall have been retained.

Dated: Wilmington, Delaware
      March ___, 2009

                                      _____
                                        UNITED STATES BANKRUPTCY JUDGE