## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Sportsman's Warehouse, Inc., et al.,[1] | Case No. 09-10990 (CSS) |
| Debtors. | (Jointly Administered) |
| | [Re Docket No. 15] |

### REPLY OF GENERAL ELECTRIC CAPITAL CORPORATION, AS AGENT, IN SUPPORT OF THE MOTION OF THE DEBTORS FOR APPROVAL OF THE FINAL FINANCING ORDER (I) AUTHORIZING THE DEBTORS TO INCUR POST-PETITION INDEBTEDNESS WITH ADMINISTRATIVE SUPERPRIORITY AND SECURED BY SENIOR LIENS ON SUBSTANTIALLY ALL ASSETS PURSUANT TO SECTION 364(c) AND (d) OF THE BANKRUPTCY CODE, (II) GRANTING USE OF CASH COLLATERAL, (III) GRANTING ADEQUATE PROTECTION, AND (IV) GRANTING OTHER RELATED RELIEF

General Electric Capital Corporation, as Agent (the "DIP Agent"), files this reply in support of the motion (the "Motion") of Sportsman's Warehouse, Inc., and affiliated debtors and debtors in possession (collectively, the "Debtors") for entry of an interim and final order authorizing the Debtors to (i) incur post-petition indebtedness with administrative superpriority and secured by senior liens on substantially all assets pursuant to Title 11 of the United States Code, 11 U.S.C. §§101 et seq. (as amended, the "Bankruptcy Code"), including pursuant to sections 105(a), 361, 362, 364(c)(1), 364(c)(2), 364(c)(3) and 364(d) thereof, and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (ii) grant use of cash collateral pursuant to sections 361 and 363(b) of the Bankruptcy Code, and

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Sportsman's Warehouse, Inc. (2614), Pacific Flyway Wholesale, Inc. (5734), Minnesota Merchandising Corp. (2908), Sportsman's Aviation, LLC (4736), Sportsman's Warehouse Holdings, Inc. (5614), and Sportsman's Warehouse Southwest, Inc (8590).

Bankruptcy Rule 4001(b) subject to the terms of the Budget (as defined below) and this Final Order ("<u>Cash Collateral</u>"), (iii) grant adequate protection in accordance with sections 364(d), 363(c)(2) and 361 of the Bankruptcy Code, (iv) grant other related relief.[2] In support of the Motion, the DIP Agent respectfully states as follows:

## **Preliminary Statement**

1. The DIP Facility allows the Debtors to operate in Chapter 11 in an orderly and administratively solvent manner while the Debtors seek to maximize the value of their assets for the benefit of all estate creditors through reorganization. In addition, in further support of the Debtors' reorganization efforts, the DIP Agent has proposed terms for exit financing.

2. The ability of retail debtors to reorganize is presently subject to unprecedented challenges that have plagued the retail industry. The DIP Facility provides the only real opportunity the Debtors have to overcome those challenges. It is therefore surprising that the Official Committee of Unsecured Creditors (the "Committee") chose to file a blunderbuss objection to the Motion (the "<u>Committee Objection</u>") without making any prior attempt to negotiate with the DIP Agent. By contrast, all other creditors that filed pleadings with respect to the Motion first contacted the DIP Agent and indicated their concerns and willingness to negotiate, and the DIP Agent believes that those matters have been or will be resolved prior to the Final Hearing on the Motion.

## **Background**

3. On March 23, 2009, upon entry of, and reliance on, the Interim Order, the DIP Agent and DIP Lenders provided the DIP Facility to the Debtors so as to enable them to immediately commence their reorganization efforts. As part of the Interim Order, the DIP

---

[2] Capitalized terms not defined herein shall have the meanings ascribed to those terms in the Motion and the DIP Loan Documents (as defined below).

Lenders were granted post-petition claims, rights, liens and protections in consideration for providing up to $30 million of post-petition financing on an interim basis to the Debtors. Denying final approval of the Motion would terminate the DIP Facility and the $85 million in post-petition financing that will be provided to the Debtors.

4. On April 10, 2009, without attempting to negotiate with the DIP Agent, the Committee filed the Committee Objection to virtually every aspect of the DIP Facility, arguing that: (i) the fees to the DIP Agent are too high, (ii) the roll-up is inappropriate, (iii) liens on proceeds of Avoidance Actions should not be granted, (iv) liens on unencumbered assets should not be granted, (v) the DIP Lenders' remedies should be scaled back, (vi) the investigation period is too short and the budget for investigation is too little, (vii) the Debtors' acknowledgement of Pre-Petition Obligations should be rejected, (viii) the waiver of the Bankruptcy Code Section 506(c) waiver should be eliminated, (ix) the plan milestones in the DIP Loan Documents are too short, and (x) the Events of Default are too broad.

### Argument

Liens and Claims on Avoidance Action Proceeds

5. The DIP Agent and DIP Lenders propose to provide up to $85 million in post-petition financing to the Debtors. Accordingly, pursuant to Bankruptcy Code Section 364(c)(2), there is nothing inappropriate about securing post-petition advances with post-petition assets such as proceeds of Avoidance Actions, which are property of the estate under Section 541(a)(3) of the Bankruptcy Code. *See* 11 U.S.C. §§ 541(a)(3) ("property of the estate" includes "[a]ny interest in property that the trustee recovers under section . . . 550") and 364(c)(2) (post-petition loan may be secured by "property of the estate"); *see, e.g., In re Global Home Products, LLC*

(No. 06-10340, Bankr. D. Del. May 4, 2006); *In re Musicland Holdings* (No. 06-10064, S.D.N.Y. 2006).

6.  At a minimum, proceeds from Avoidance Actions should be available to pay administrative claims prior to any distribution to unsecured creditors; to do otherwise would be in violation of the absolute priority rule. In this regard, Section 364(c)(1) of the Bankruptcy Code specifically authorizes the DIP Lenders to receive, as a condition of extending credit not otherwise available to the Debtors on an unsecured basis, an administrative expense claim "with priority over any or all administrative expenses of the kind specified in [Bankruptcy Code sections] 503(b) or 507(b)." Thus, the Bankruptcy Code itself contemplates a priority hierarchy that would permit the DIP Lenders to be repaid for their post-petition advances and extensions of credit from the proceeds of Avoidance Actions ahead of other administrative creditors, and certainly ahead of general unsecured creditors represented by the Committee. "[T]he trustee (or debtor in possession) may offer more than one of the protections described in section 364(c)." 3 *Collier on Bankruptcy*, 364.04[1], at p. 364-11-12 (15th ed. rev. 2005); *See also In re Sobiech*, 125 B.R. 110, 115 (Bankr. S.D.N.Y. 1991) (stating that, "[a]lthough the subdivisions contained in [Bankruptcy] Code §364(c) appear in the alternative, creditors often seek the 'super-priority' of [Bankruptcy] Code §364(c)(1) in conjunction with the lien protection of [Bankruptcy] Code §364(c)(2)").

7.  Moreover, notwithstanding the Committee Objection, unsecured creditors clearly benefit from the DIP Facility as proceeds of Avoidance Actions will serve to satisfy and reduce claims with priority ahead of the unsecured creditors, such as administrative claims of the estate. *See Trans World Airlines, Inc. v. Travellers International (In re Trans World Airlines, Inc.)*, 163 B.R. 964, 972 (Bankr. D. Del. 1994) (Walsh, J.) ("the [Bankruptcy] Code clearly contemplates

the use of avoidance action recoveries in the operation of the business in a manner which only indirectly benefits creditors.").

Bankruptcy Code §506(c) Waiver

8.  Bankruptcy Code §506(c) waivers are routinely granted in connection with post-petition financing. *See, e.g.*, *In re Lillian Vernon* (No. 08-10323, Bankr. D. Del. March 20, 2008); *In re Hancock Fabrics, Inc.*, (No. 07-10353, Bankr. D. Del. 2007); *In re Global Home Products, LLC* (No. 06-10340, Bankr. D. Del. May 4, 2006); *Inteliquest Media Corp. v. Miller (In re Inteliquest Media Corp.)*, 326 B.R. 825 (B.A.P. 10th Cir. 2005) (rejecting appellants' argument that the Bankruptcy Code §506(c) waiver in the financing order violated public policy and holding that 506(c) surcharge is not property of the estate and benefits no one other than the secured creditor being surcharged); *In re Enron Corp.*, 2001 Bankr. LEXIS 1563, at *10 (Bankr. S.D.N.Y. Dec. 3, 2001) (approving post-petition financing arrangement where the debtors' DIP loan obligations took priority over any and all administrative expenses or other claims under Section 506(c)); *In re Film Equip. Rental Co.*, 1991 U.S. Dist. LEXIS 17956 (S.D.N.Y. December 12, 1991) (upholding bankruptcy court's cash collateral order and enforcing Bankruptcy Code §506(c) waiver when debtor's counsel later sought to surcharge the secured creditor's collateral for fees); *In re Antico Mfg. Co.*, 31 B.R. 103, 106 n.1 (Bankr. E.D.N.Y. 1983) (overruling objection to a Bankruptcy Code §506(c) waiver and stating that such waiver "is not so detrimental or improper as to jeopardize the loss of the entire financing package").

9.  A section 506(c) waiver is particularly appropriate in this case because the DIP Agent, on behalf of the DIP lenders, has agreed to the use of its collateral to pay administrative expense claims and to fund a carve-out.

Release of Pre-Petition Agents and Lenders

10. Release provisions for pre-petition lenders have been routinely granted as consideration for providing post-petition financing and consenting to priming financing. *See, e.g., In re Ellingsen MacLean Oil Co., Inc.*, 834 F.2d 599, 604 (6th Cir. 1987), *cert denied*, 488 U.S. 817 (1988) (finding that the release of pre-petition liabilities in final financing order was appropriate as consideration for post-petition financing as such release "did not create any new lien as such securing prepetition debt; rather, at most, it further secures prepetition debt by prohibiting any challenge to the prepetition security interests" and "[u]nder the circumstances of this case, this condition seems to have been necessary to induce the Banks to extend more credit, which is the underlying purpose of [Bankruptcy Code] section 364"); *In re Florida West Gateway, Inc.*, 147 B.R. 817, 820 (Bankr. S.D. Fla. 1992) (upholding final order that contained an acknowledgement that certain disputed pre-petition obligations were cancelled). In any event, the release provisions here specifically preserve the right of other parties in interest, including the Committee, to file timely Challenges and, if successful, not be bound by such releases.

Roll-Up

11. Approval of a roll-up is routinely granted, particularly where, as is the case here, (a) absent the proposed financing, the debtor's business operations will not survive; (a) the debtor is unable to obtain alternative financing on other terms; (c) the proposed lender will not accede to less preferential terms; and (d) the proposed financing is in the best interests of the general creditor body. *In re Vanguard Diversified, Inc.*, 31 B.R. 364, 366 (Bankr. E.D.N.Y. 1983); *see also Ellingsen MacLean Oil Co., Inc.*, 834 F.2d 599, 601 (6th Cir. 1987); *In re Beker Industries Corp.*, 58 B.R. 725 (Bankr. S.D.N.Y. 1986); *In re FCX, Inc.*, 54 B.R. 833, 837 (Bankr. E.D.N.C. 1985); *In re General Oil Distributors, Inc.*, 20 B.R. 873 (Bankr. E.D.N.Y. 1982).

Remaining Committee Objections

12. The remaining portions of the Committee Objection are without merit and without support. The Committee has failed to provide any support for its claim that the fees are too high and has failed to demonstrate that alternative financing is available on better terms, if at all. The Committee has failed to provide any support for its claim that liens on unencumbered assets should be prohibited or to demonstrate that alternative financing would be available without such liens. The Committee has failed to even specify what, if any, default remedies should be scaled back, much less demonstrate the reasons that such remedies are excessive. The Committee has cited no precedent to support its assertion that the Debtors' acknowledgement of Pre-Petition Obligations is inappropriate. The Committee has not even cited which plan milestones are too short in their view and why they believe the Debtors' business judgment with respect to such milestones is incorrect. The Committee has failed to cite, much less demonstrate, which Events of Default are too broad. The Challenge period for the Committee may be extended by the Court. The Committee has not shown any justification as to why they need $100,000 as a Challenge investigation budget for what is a relatively simple investigation.

## Conclusion

WHEREFORE, the DIP Agent respectfully requests that the Committee Objection be overruled and the Motion be granted in all respects.

Respectfully submitted:

Dated: April 13, 2009
Wilmington, Delaware

By: /s/ Kurt F. Gwynne
Kurt F. Gwynne (No. 3951)
Mark W. Eckard (No. 4542)
REED SMITH LLP
1201 Market Street, Suite 1500
Wilmington, DE 19801
Phone: (302) 778-7500
Facsimile: (302) 778-7575
E-mail: kgwynne@reedsmith.com
meckard@reedsmith.com

David Neier
Robert Boudreau
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
Telephone: (212) 294-6700
Facsimile: (212) 294-4700
E-mail: dneier@winston.com
rboudreau@winston.com

Attorneys for General Electric Capital Corporation, as DIP Agent